The first case is 16-15446, Southern Atlantic Companies, et al. versus the School Board of Orange County. Mr. Miller. May it please the Court. My name is Brett Miller. I represent the appellants, Southern Atlantic Companies, LLC, Edward Hutchins and Raymond McIntosh. With respect to appellants' First Amendment retaliation claims against the School Board of Orange County, Florida, the General Counsel for the School Board is the final policymaker in asserting a claim against and assigning Southern Atlantic Companies' bid protest bond to Wharton Smith so that Wharton Smith could sue the surety. In awarding... But is the assignment of a bond a constitutional retaliation? Your Honor, in this context, it was because there were no attorney's fees awarded in the DOA administrative proceeding below, which requires that the administrative law judge find that the bid protest was brought for an improper purpose. That finding was not made here. The order would have needed to include that finding. That just means that something that they did wasn't legally supportable at the end of the day. That doesn't mean that it was First Amendment retaliation. Your Honor, the facts of this case show that the General Counsel, his reasons for assigning the bond were a pretext. There's a timeline in which shows there's causation to support that it was retaliation. There's also comments by the General Counsel connecting the bid protest to the assignment, stating that it was frivolous. It should have never been there in the first place. Well, you lost a bid protest, so maybe they had something there. There was a finding that there was no standing, but it was not frivolous. That would have been the improper purpose finding that the ALJ would have had to have made. Further, the pretext that the General Counsel provided was that the school board was on the hook for the attorney's fees and costs incurred by Wharton Smith. Wharton Smith was required under the contract, the construction management contract, to indemnify and defend the school board for any claim. They were not on the hook. Later, the General Counsel in emails to school Flynn stated, we are not on the hook for these attorney's fees or costs because Wharton Smith is required to indemnify the school board. Therefore, it was retaliatory action on the part of the General Counsel in assigning the bond. But that action by the contractor against you, the separate action in the state court, although it proved unsuccessful, that didn't generate bad results. Yes, Your Honor. But those are separate issues. That was in regards to whether or not Wharton Smith's action was frivolous. And Judge Blackwell, in that proceeding, summed it up nicely at the sanctions hearing when International Fidelity Company's attorney was trying to get the 57-105 sanction, stating that this issue should have never been brought before the court because no attorney's fees were awarded below. The bond should have been returned. She summed that up saying, well, isn't that the school board's wrong? It should have never even gotten to the point where there was a lawsuit that Wharton Smith could bring because the school board, through the General Counsel, should have never even assigned the bid protest bond. The General Counsel was the final policymaker in this aspect because his decisions were not subject to review. They were not constrained by written policies. They were treated as... Did you have below when you felt that they were, they should not have sought use of the bond? Did you ask for some sort of sanctions during an appropriate court proceeding? Litigation, lots of times people do things that turn out not to be successful or meritorious. And during the immediate litigation, that's the time where you seek sanctions for inappropriate action. I must admit I've never heard of anybody filing a First Amendment claim based on something like that. The underlying action, if you're referring to the bond action, which Wharton Smith sued the surety, the school board was not a party. It was titled Wharton Smith as assignee of the school board. So there couldn't have been any sanctions issued against the school board in that proceeding. Therefore, there was no ability for them to seek the attorney's fees against... Then perhaps it was their assignee's responsibility for what happened, not the school board. No, Your Honor, not in this context because the General Counsel is the final policymaker for the school board with regard to legal matters. Why do you say that he's the final policymaker? What is there that officially in writing says he's a policymaker? Is there anything in the statutes of Florida that say that or anything in his contract? Your Honor, 1001.43 allows the school board to create a legal department and have that legal department govern legal affairs for the school board. They did this. They hired the General Counsel as its first inside in-house counsel. The school board did not create any internal written policies for review of the General Counsel's decisions for the areas that he is to manage and he is not to manage or what he needs to seek approval of. But there were custom and practices within the school board. So every time the General Counsel does something, a piece of litigation, he objects to something in discovery or he himself is aggressive in discovery. Every time he does something, he's the final decision maker, the final policymaker, and you get to go after the school board for whatever that decision was? No, Your Honor, because what the test requires by this circuit is that there be an opportunity for review. And the appellant sought that opportunity for meaningful administrative review. First, a noteworthy point is that there is no written process, once again, for actually seeking this review. So the only potential review they could have obtained was by going to a pre-agenda meeting before the school board, five minutes before the normal meetings and addressing their concerns at that time. They did exactly that. And at that meeting on January 11, 2011, the chairman of the school board specifically assigned handling the requested return of the bond to the General Counsel. From that moment on, the school board, they, as the chairman stated in his deposition, were keeping an arm's length from this matter and the General Counsel was to deal with this. You couldn't, you didn't have the opportunity to challenge the assignment after the fact before the school board? No, Your Honor. Why not? Like the Holloman v. Harlan case, the assignment was essentially a fait incompli. Once it was completed, those that were affected by the decision, the appellants, they were subject to that decision. They had to... Your Honor, there are a lot of cases in which individuals try to set aside government action, municipal or otherwise, on the ground that, or challenge such action on the ground that the person doing the work on behalf of the government entity didn't have the authority to do it. Or exercise his or her authority incorrectly. You couldn't have done that, you don't think? Your Honor, in the bond action below, they did try to do that. Tried to erase the issue of whether or not there was appropriate authority for the assignment. Not in the bond proceeding. I mean, your claim is that the assignment was a retaliatory action, right? Yes, Your Honor. Okay. And you're saying that there was no meaningful opportunity for review of that assignment. And I'm asking you, why not? The assignment was completed on August 2, 2011. The very next day, August 3, 2011. There was, there was no practical opportunity to be able to seek the board's review at that time. The board couldn't have done an ex post review because, or made an ex post decision to reverse the assignment because they would have had to have had Wharton Smith's consent in order to do so, and they would have had to dismiss the lawsuit. So by the assignment... Why couldn't that have happened? Your Honor, in theory, it could have, but in practice, there was no opportunity for that review to take place. The lawsuit went forward. The appellants sought to intervene. They immediately intervened. Once they found out about this, they sought to dismiss it. They did initially dismiss the, or about to dismiss the original complaint, and then it was amended complaint, alleging that the bond was now a common law bond, giving the action a colorable legal basis, and leading it to go on for years. So there was no opportunity for them to actually be able to seek the board's review for Wharton Smith's lawsuit against the bond after the general counsel had specifically assigned it to Wharton Smith, knowing full well that they were going to sue the surety. If, if, if Wharton Smith had not sued, would you have a retaliation claim? There, there likely would have been no damage, Your Honor. So... Well, you still would have had the bond withheld for a period of time. Yes, Your Honor. But the damages that have occurred here are because of the attack against the bond and the surety hurting Southern Atlantic Companies, essentially their credit rating, and be able to get additional jobs. If they would have never made that lawsuit against it, the bond was dead because it was a statutory bond. The damages incurred because of the amended complaint allowing it to continue on as a common law bond. Well, it was a statutory bond, but it didn't really say so, right? I mean, there was some question about that, obviously. The appellants obtained the bond from the school board's website. They used it in a bid protest to the school board that went before a division of administrative hearings. So it was used for a statutory purpose. The school board, when they were seeking to obtain fees at DOA, stated fully that it was a statutory bond, presented to 255.0516. So it was a statutory bond used for, in a statutory proceeding. The general counsel's decisions were not subject to review. This is further confirmed by the numerous letters that the appellants sent to the board, specifically requesting that the board actually take the action to rescind the assignment and end Wharton Smith's lawsuit, to which they did nothing. They were aware of it, but they continued to refer the matter to the general counsel. So to the extent that there could have potentially been a review process... A very important point, and I don't find any evidence anywhere that indicates the school board does not have the authority to review whatever the general counsel did. How can you say that the record supports that statement you made? The chairman testified that the school board doesn't have the ability to intervene in legal matters, and that's the general counsel's responsibility, no more than the board has the ability to... That can't be right. You're telling me that if the general counsel decided to admit that the city had engaged in a course of conduct that would open it up to all sorts of liability, that that action couldn't be countermanded by the school board itself? It could, but the way that the chairman understood it, which helps support that there was a defect in the review process, is that they couldn't do these things, no more than they could intervene in the hiring and firing of employees, such that that's the superintendent's strict purview and decision. You're talking about the $50,000 threshold, or outside of that threshold? The $50,000 threshold was a custom practice of theirs, but outside their threshold, he was stating that they did not, on what he termed ministerial functions of the general counsel's department to handle day-to-day litigation matters. What's a ministerial function? Well, he classified that as handling the assignment, being that that was strictly within general counsel's purview, and that that would never come before the board, and if it did... The filing of a lawsuit is ministerial? No, but the assignment was. The school board didn't file the lawsuit. I know that. I'm just asking a question. Yes, Your Honor. The filing of a lawsuit would potentially be considered a ministerial function. The settling of a claim is also ministerial? Under $50,000, the chairman testified that only when there's a payment that the school matter would actually come before the board for their review and approval. Even then, that wasn't a written policy. It was a custom and practice. Only over $50,000 they had to be involved? Yes, Your Honor. Only over $50,000. Do you want to address the attorney's fee issue? Yes, Your Honor. The district court committed an abuse of discretion in awarding attorney's fees under Section 1988 to the school board. The appellants didn't assert a knowingly non-existent right. Their positions were supported by law and fact, and they essentially established a prima facie case. The one element that has yet to be determined is causation, but that's a factual matter for the jury to decide. This court and the Supreme Court have described it as a stringent standard. There have been cases that support the fact that even when an individual's position is not supported by case law, it's a new and novel theory that that's not necessarily frivolous to warrant there being fees. In this case, the appellants, Edward Hutchins and Raymond McIntosh, asserting claims and individual capacity for a retaliatory act to their business is the same act to them is supported by case law. Case law from the Ninth Circuit, some case law from the middle district of Florida where we came from that supports that theory too. So their claim was not frivolous, and therefore the district court abuses discretion. All right. Thank you very much, Mr. Miller. Mr. Ackerman. Thank you, Your Honor. The school board does not consider this to be a close case, and the school board did not request oral argument. And it's apparent from the questioning of the panel so far that y'all are onto this. So I'm going to rest on my brief unless there's any questions. That's usually not a good idea, Mr. Ackerman. Then I will proceed. The questions from a panel. Well, you litigate the cases you see fit. And if you want to rest on your briefs, then go ahead and rest on your briefs. We don't want to litigate the case for you. Well, I'm going to reiterate what is in my brief. And since the court has signaled to me that I'd better not rest on it, I'll proceed. Well, usually when we grant oral argument, it means we think there's something to be said. Well, let me tell you what's on my mind. Yes, Your Honor. And that is the attorney's fee issue. There are cases, not binding, but there are cases from other jurisdictions, one from the company, one of them in a case involving a job, you know, a contract, to file an independent claim for retaliation, aside from the claim filed by the company itself. One of them involving emotional distress claims. So legally speaking, this was not a frivolous claim, right? I'm not familiar with that case. Did you say the second circuit? They're the ones cited by Mr. Hutchins and Mr. McIntosh in their blue brief. Yeah, they have two ninth circuits. So Your Honor said second circuit. Maybe I got the circuit incorrect, but I'll tell you what the cases are. Thank you. No, you are correct and I am incorrect. So ninth circuit. Yes, Your Honor. And this one was Soranos Gasco Incorporated. There's RK Ventures, although to a lesser extent. Yes, Your Honor. And there is, I can't put my fingers on the district court case. There was one unpublished case and I think one published case. Yeah, I can't put my finger on it. But my reading of those cases was that at least some courts, one had denied summary judgment, one had denied a motion to dismiss, allowing a claim by the principal of a company when you might think that the municipality's conduct was directed at the company and not the principal. Yeah, Your Honor, if I recall Soranos Gasco, the owner of the business had spoke out on a variety of governmental matters over the course of numerous years that did not necessarily relate to his business. He also got into head-to-head fights with the government, I believe on regulatory and permitting matters that were obviously in the name of the business. So the holding of the case, as we see it, the court said a shareholder does have standing where he or she has been injured directly and independently of the corporation. So we think the better rule is that the shareholder would have to participate in some constitutionally protected behavior in his own capacity or her own capacity and not simply be acting on behalf of the corporation. I believe that was what the court was getting at in Soranos Gasco. But the district court here did not, was not able to say, at least with any confidence, that their speech was not protected, right? He seemed to assume that it was protected, yes, Your Honor. Right. So if that's true, then a case like Soranos Gasco becomes a little closer. My point is not that they should have prevailed on their claim. My point is that maybe there's a pretty decent argument that their claim was not legally frivolous, so as to allow an award of attorney's fees against them. Yes, Your Honor. And if they have been injured directly and independently, then that may be the case. But they claimed emotional distress damages, and those damages are generally compensable if you have a valid 1983 claim. That is true. And if they had spoken out in their individual capacities, which I don't agree with the district court's assumption, which was, I believe, a one-sentence assumption. If you look at the facts and you look at the statements that are actually relied upon, every single one of them is in the context of the bid protest quasi-judicial hearing itself. There is no far-reaching political speech by Mr. Hutchins or Mr. McIntosh outside of this proceeding. In fact, the main letter they rely on, it's on SAC letterhead. It's signed by Mr. Hutchins in his capacity as president of the limited liability company. So this is not like Soranos Gasco, where I believe the owner had for many years spoken out on political issues. And simultaneously had been involved in his corporate capacity against the government. So that is why we think the better rule is the one that we have cited. We'd also point out that if the threshold for an individual owner of a company to file a Section 1983 lawsuit against the government is that they have been injured only, then that is a serious floodgate, Your Honor. I struggle to understand how any owner of any company could not allege emotional distress over a lawsuit. They're inherently cause emotional distress. Well, you and I are not on a different page. I think I agree with you. But at the time that this lawsuit was filed, I don't see that there's anything in the 11th to adopt that theory. Do you think there's binding precedent for closing that attempt at the time that the lawsuit was filed? Yeah, there is. But I don't know that I would strenuously urge it. There's Gregory v. Mitchell, which under Bonner v. Pritchard is binding precedent. And Gregory v. Mitchell is consistent with the other cases that we've cited. Now, does Gregory v. Mitchell have a lengthy exposition on this issue that's precise and direct and aggressive? I would readily concede it does not. But it is binding precedent. It was decided back in 1981 before Bonner v. Pritchard. And so under Bonner v. Pritchard, it is binding precedent and was at the time the case was filed. Thank you, Your Honors. Please, the Court. In the proceedings below, Doa. Let me ask you, Mr. Miller. The defendants relying on Gregory v. Mitchell and in their brief, they say you haven't addressed it. And in your reply, you still didn't address it. Can you want to address it here? Your Honors, we rest on the Ninth Circuit cases that provide that you can have a claim for a retaliation based upon damage to the business and separate and distinct damage to the individual owners based upon so long as they meet the other elements of a First Amendment retaliation claim. They engaged in First Amendment protected speech, there was adverse effect, and they had separate and distinct damages. At the Doa proceedings, they chose to have Mr. Green represent them and did not specifically act as qualified representatives as they could pursuant to 120.626. So therefore, they did act in their individual capacity and not as members or owners of the corporation. If I may, I would like to just clarify an answer that I made to Judge Jordan's question earlier about whether or not appellants could have sought to have the assignment reversed. And they did do that in, once they found out about it in August 29th, sending the letter to the school board specifically notifying them of the issue and trying to resolve it and have it addressed. And the board did not take any action, was aware of it, continued to refer the matter to the General Counsel, and therefore, there was a continued defect in any sort of alleged review process that could have been potentially available to them. So they did try to seek that reversal, but it was not provided to them. All right. Thank you very much, Mr. Mitchell. Thank you, Mr. Ackerman. Let me see the red brief in that case. Okay. All right. Thank you.